TYSON, Judge.
Melissa Lovelace appeals from an Opinion and Award of the North Carolina Industrial Commission ("the Commission") denying her claim against Southern Truck Service ("Defendant"). We affirm.
I. Factual Background
Plaintiff is the administrator of the estate of Johnny Lee Whitley ("Whitley"). Whitley was diagnosed with mesothelioma in 2012 and died on 19 May 2016. The parties stipulated and agreed that Whitley's mesothelioma was caused by cumulative exposure to asbestos-containing materials throughout his employment.
Whitley worked for Defendant from 1976 to 1980 as a general automotive mechanic working on commercial fleet trucks. Defendant's clients included the American Red Cross and Standard Uniform. Defendant's owner noted the American Red Cross, in particular, was a "nice size[d]" account comprising of twelve to fifteen vehicles. Whitley performed repairs on the clutches, engines, and transmissions of these trucks.
Whitley also frequently performed brake repairs when he worked for Defendant. For a routine brake repair, Whitley would jack the vehicle up and remove the tire and wheel. Whitley then removed, opened, and cleaned the brake drum with compressed air or a wet solution. When he used compressed air to clean the inside of the drum, brake dust would blow off the brake shoes and lining and cover him. After cleaning the area, Whitley would complete the repair. A brake repair could take an entire day or longer to perform.
While working for Defendant, Whitley worked with the following brands of brake parts: Bendix, Raybestos, and Grizzly. Defendant's brake parts were supplied by NAPA and Ford Rebuilders. Whitley could not state whether the brake parts he used while working for Defendant contained asbestos. However, Plaintiff called Jimmy Moser as a witness, who worked for Defendant at the same time as Whitley. Moser remembered the brake parts' packaging and testified the brake parts used by Defendant during Whitley's employment contained asbestos.
Regarding the prevalence of brake work performed at Defendant's workplace, Moser testified:
[Attorney]: ... During that time period, if I went in there on any given day, would there be somebody doing brake work?
[Moser]: Yeah, just about all the time. That's a big thing on big trucks. ... When they come in for service, you're doing brakes on them.
Moser further stated he personally performed brake work three to four times a week, when he worked for Defendant.
After Whitley left Defendant's employment in 1980, he opened his own business, Built Rite, and worked there for three to four years. At Built Rite, Whitley worked six to seven days and approximately eighty hours a week. Whitley performed commercial truck repairs at Built Rite, including work for the American Red Cross. The American Red Cross had been a large account for Southern Truck, but Whitley picked up the account when he began to operate Built Rite.
A. Whitley's Testimony
Whitley testified he performed approximately eight to ten brake repairs while at Built Rite. When performing these brake repairs, Whitley followed the same procedures he used when he worked for Defendant. This included using compressed air to spray clean the brakes, which caused brake dust to blow into the air. Whitley used the same brake part products at Built Rite, as he had when he worked for Defendant, such as Bendix and Grizzly. He purchased some of these parts from NAPA.
Whitley also performed repair work on salvaged cars at Built Rite. This included working with Bondo, a body filler, which had to be sanded down and created dust. Whitley stated he was unaware whether Bondo contained asbestos. However, Dr. Jill Ohar testified she had previously been told by other workers that Bondo contained asbestos during that time period, even though she had not conducted any independent research to support that claim.
While performing brake repairs and sanding down Bondo at Built Rite, Whitley did not wear a face mask or use any other type of breathing protection. Whitley admitted it was possible he used asbestos-containing products while working at Built Rite, because he performed the same type of automotive and truck work at Built Rite as he had when he worked for Defendant.
B. Dr. Ohar's Testimony
Dr. Ohar further testified if Whitley had performed brake repairs with Defendant on a daily basis, then Whitley's exposure to asbestos would have been significant. Dr. Ohar noted Whitley did not report his self-employment at Built Rite in his employment history, nor disclose he had worked with clutches or brakes during his self-employment. As such, she admitted her opinion regarding Whitley's exposure to asbestos was based only on his reported employment history, which did not include his subsequent years owning and working at Built Rite.
C. Dr. Frank's Testimony
Dr. Arthur Frank was tendered as an expert in occupational medicine, internal medicine, and asbestos-related diseases. According to Dr. Frank, Whitley had experienced significant exposure to asbestos during his life. Dr. Frank testified that exposure to asbestos for as little as one day is sufficient to develop mesothelioma. Dr. Frank noted if Whitley performed brake or clutch work using asbestos-containing products after working for Defendant, then such later work would have contributed to his cumulative exposure.
D. Other Evidence Presented
The evidence stipulated to by the parties and presented to the Commission indicates companies began phasing out asbestos-containing brake parts as the industry standard in the 1980s. A memorandum from Ford Motor Company ("Ford") dated 15 March 1985 states "[o]ur suppliers tell us that they are now in the process of phasing out the use of asbestos in the friction products that they supply to us. We understand that by 1990, most if not all of these products will be asbestos free[.]" However, the memorandum goes on to state, "currently, [Ford's] aftermarket parts distribution system has on hand some 51,000 asbestos brake parts in stock[.]"
Despite the efforts to phase out asbestos-containing products, other evidence indicates these products were still prevalent on the market in the early 1980s. A guidance manual from 1986 produced by the Environmental Protection Agency ("EPA") documents the dangers of asbestos exposure for automotive mechanics. The manual provides recommendations for mechanics who perform brake repairs on how to control exposure, and specifically notes "[u]sing a compressed air hose to clean drum brakes can release up to 16 million asbestos fibers in the cubic meter of air around the mechanic's face." A 1986 EPA instructional safety film states "most brake linings contain asbestos."
Similarly, a guidance manual released by Ford in 1998 continued to warn their mechanics of the dangers of asbestos-containing brakes and provided the procedure for limiting asbestos exposure. Discovery responses of the parent companies for Bendix and Grizzly brake products were stipulated into evidence. The responses indicated some Bendix brake products contained asbestos until at least 1988; and some Grizzly brake products contained asbestos until 1985. Dr. Frank's testimony indicated brake parts containing asbestos are still used and sold today.
E. Proceedings Before the Commission
On 29 January 2013, Whitley filed a Form 18B with the Industrial Commission claiming that his mesothelioma was an occupational disease caused by exposure to asbestos. Defendant denied Whitley's claim for workers' compensation. On 4 March 2015 the matter was heard before Deputy Commissioner James C. Gillen. The Deputy Commissioner held Whitley's last injurious exposure to asbestos occurred during his employment at Built Rite and denied Whitley's claim against Defendant. Whitley appealed to the Full Commission.
After reviewing the evidence presented, the Full Commission found "the record is replete with evidence that asbestos brakes were very prevalent in the industry during the time [Whitley] worked for Built Rite." The Commission also found:
20. The stipulated discovery responses, the Ford memorandum, the July 1986 EPA paper, and the "Don't Blow It" film establish that asbestos brakes were very prevalent in the industry after [Whitley's] employment with [Defendant]. When considered in conjunction with the medical testimony that one day of asbestos exposure is sufficient to cause mesothelioma, the greater weight of the evidence in view of the entire record establishes that [Whitley's] last injurious exposure to the hazards of asbestos and mesothelioma occurred during [Whitley's] employment with Built Rite.
Based upon these findings of fact, the Commission held "the preponderance of the evidence in view of the entire record establishes that [Whitley's] last injurious exposure that caused or augmented his mesothelioma occurred during his employment with 'Built Rite Services.' " The Commission denied Plaintiff's claim against Defendant. Plaintiff appeals.
II. Jurisdiction
Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-29(a) (2015).
III. Issues
Plaintiff argues several of the Commission's findings of fact are not supported by competent evidence. Plaintiff further argues the Commission erred by concluding Whitley was last exposed to asbestos after his employment with Defendant.
IV. Standard of Review
This Court reviews an opinion and award of the Commission to determine "whether there is any competent evidence in the record to support the Commission's findings and whether those findings support the Commission's conclusions of law." Oliver v. Lane Co. , 143 N.C. App. 167, 170, 544 S.E.2d 606, 608 (2001).
"The Commission is the fact finding body. ... [and] 'the sole judge of the credibility of the witnesses and the weight to be given to their testimony.' " Adams v. AVX Corp. , 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (citations and quotation marks omitted). As such, "this Court is bound by the Commission's findings when they are supported by direct evidence or by reasonable inferences drawn from the record." Ivey v. Fasco Indust., 109 N.C. App. 123, 126, 425 S.E.2d 744, 746, disc. review denied , 333 N.C. 574, 429 S.E.2d 570 (1993) ; see Hatcher v. Daniel Int'l Corp. , 153 N.C. App. 776, 780, 571 S.E.2d 20, 23 (2002) (holding the Commission may "rely on inferences that may reasonably be drawn from the evidence of record"). "Where there is competent evidence to support the Commission's findings, they are binding on appeal even in light of evidence to support contrary findings." Starr v. Gaston Cty. Bd. of Educ. , 191 N.C. App. 301, 304-05, 663 S.E.2d 322, 325 (2008).
The Commission's conclusions of law are reviewed de novo . McRae v. Toastmaster, Inc. , 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).
V. Challenged Findings of Fact
Plaintiff argues the Commission's Findings of Fact 3, 5, 8, 9, and 19 are not supported by any competent evidence.
Plaintiff asserts statements in Findings 3 and 5 are misleading. Finding 3 includes "[Whitley] testified that he applied an aerosol brake cleaner prior to using the air hose in an effort to keep down the asbestos dust." While Whitley testified he used an aerosol brake cleaner only toward the end of his employment with Defendant, his testimony clearly demonstrates he did use this type of cleaner. Finding 5 includes the statement, "Jimmy Wayne Moser, one of [Whitley's] coworkers, testified that brake work was being done 'just about all the time. That's a big thing on big trucks ... When they come in for service, you're doing the brakes on them.' " This statement is a direct quote from Moser's testimony. Both of these findings are supported by competent evidence in the record on appeal.
Plaintiff challenges Finding 8:
[Whitley] testified that he worked close to seven days, or eighty hours, per week for Built Rite, but that he did no more than 8 to 10 brake jobs during the entire time he worked in that business. Given Mr. Moser's testimony regarding the frequency of brake work when working on the big trucks in commercial fleets, and the fact that Built Rite serviced American Red Cross, Standard Uniform, and Mecklenburg Drywall, to name a few, the Full Commission does not accept as credible [Whitley's] testimony that he did no more than 8 to 10 brake jobs during the three- to four-year period he worked for Built Rite after he left [Defendant].
Plaintiff argues the Commission mischaracterized Moser's testimony that "brake work was being done 'just about all the time' " and no evidence shows Whitley did more than eight to ten brake jobs. As noted previously, the "Commission is sole judge of the credibility of the witnesses and the weight to be given to their testimony." Adams , 349 N.C. at 680, 509 S.E.2d at 413. Here, the Commission acted within its discretion and purview to determine whether Whitley's testimony was credible based upon the other facts in evidence. Plaintiff's claim is overruled.
Plaintiff challenges the following statement in Finding 9: "Decedent worked sporadically for Jack's Jaguars in 1986, and told Dr. Ohar that he performed brake jobs and clutch and gasket work there." Plaintiff asserts the Commission failed to recognize any other evidence on this point, specifically that Whitley testified he did not perform clutch work for Jack's Jaguars. However, Dr. Ohar's report, which was admitted into evidence, clearly stated "[Whitley] worked at Jack's Jaquar [sic] as a mechanic changing out brakes, clutches and gaskets in 1986." Despite the existence of conflicting evidence on this issue, Dr. Ohar's report is competent evidence. This finding is binding on appeal. See Starr , 191 N.C. App. at 304-05, 663 S.E.2d at 325.
Plaintiff challenges Finding 19, which states "Grizzly sold asbestos-containing brake products under the Sears label until 1985." Plaintiff argues this statement is incorrect.
The evidence indicates Maremont purchased assets of Grizzly Manufacturing Company in 1953. Grizzly Manufacturing Company manufactured friction products such as brake linings. Maremont sold this Grizzly division to Nuturn Corporation in 1977. Nuturn continued to sell friction brake products under the Grizzly brand name until the late 1990s. Although Maremont sold Grizzly to Nuturn in 1977, it continued to distribute Nuturn-manufactured brake products to Sears under the Sears label. The record evidence indicates the Nuturn-manufactured brake products sold to Sears no longer contained asbestos as of 1985. Based upon this evidence, competent evidence supports the finding that Grizzly products containing asbestos could have been sold under the Sears label until 1985.
Plaintiff also contends the Commission failed to include a statement in the Stipulations section of its Opinion and Award showing the parties had stipulated that Whitley had mesothelioma caused by asbestos exposure. Plaintiff fails to explain why this was an error, especially since Finding 21 explicitly states "Defendants agreed to stipulate that [Decendent] suffered from mesothelioma that was caused by cumulative exposure to asbestos-containing materials throughout his employment."
The Commission is the sole fact-finding body and determines the weight and credibility to give the evidence. Adams , 349 N.C. at 680, 509 S.E.2d at 413. Based upon our review of the record evidence in this case, the findings of fact challenged by the Plaintiff are supported by competent evidence in the record and are binding on appeal. See Starr , 191 N.C. App. at 304-05, 663 S.E.2d at 325.
VI. Last Injurious Exposure
Plaintiff argues the Commission's conclusion Whitley was exposed to asbestos after employment with Defendant is not supported by any competent evidence. We disagree.
N.C. Gen. Stat. § 97-57 (2015) provides:
In any case where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable.
"To recover under this statute, the plaintiff must show: (1) that he has a compensable occupational disease and (2) that he was last injuriously exposed to the hazards of such disease in defendant-employer's employment." Vaughn v. Insulating Servs. , 165 N.C. App. 469, 472-73, 598 S.E.2d 629, 631 (citation and quotation marks omitted), disc. review denied , 359 N.C. 75, 605 S.E.2d 150 (2004) ; see Hill v. Federal Express Corp. , 234 N.C. App. 488, 490, 760 S.E.2d 70, 73 (2014) ("The claimant in a workers' compensation case bears the burden of initially proving each and every element of compensability ... [by] a preponderance of the evidence." (citations and quotation marks omitted)).
The last injurious exposure is one "which proximately augmented the disease to any extent, however slight." Rutledge v. Tultex Corp. , 308 N.C. 85, 89, 301 S.E.2d 359, 362-63 (1983) (citation and quotation marks omitted); Caulder v. Waverly Mills , 314 N.C. 70, 72, 331 S.E.2d 647, 648 (1985) ("[Our cases] make it clear that exposures to substances which can cause an occupational disease can be a last injurious exposure ... even if the exposure in question is so slight quantitatively that it could not in itself have produced the disease.").
Here, the Commission's binding findings of fact support its conclusion that Whitley's last injurious exposure to asbestos occurred after his employment with Defendant and during his employment with Built Rite. While the Commission's findings demonstrate Whitley was clearly exposed to asbestos while working for Defendant, the Commission's findings also demonstrate Whitley performed brake repairs while later working at Built Rite.
The Commission further found Whitley's testimony that he only performed eight to ten brake repairs during his entire employment at Built Rite was not credible. The Commission based this finding on the fact that Built Rite serviced several large commercial truck fleets and on Moser's testimony regarding the frequency of brake repairs needed on commercial trucks. The Commission found Whitley specifically remembered using Grizzly brake parts after working for Defendant, and that he also had performed brake repairs on some of the cars he had salvaged while self-employed.
The Commission relied on Dr. Frank's testimony in Finding 13:
13. Dr. Frank testified that "... we know that one day of exposure [to asbestos] will give you mesothelioma." Dr. Frank conceded that if the brakes [Whitley] worked with after he left [Defendant] contained asbestos, that work would have contributed to his cumulative exposure to asbestos and thus would have contributed to his development of mesothelioma.
Based upon the stipulated evidence, the Ford memorandum, the EPA guidance manual and video, the Commission found that asbestos brake parts remained "very prevalent" in the industry and available during the time Whitley had worked at Built Rite. The 1986 EPA video, released after Whitley had stopped working at Built Rite, noted "most brake linings contain asbestos." Furthermore, some Bendix brake products contained asbestos until the 1988, and some Grizzly brake products contained asbestos until 1985.
None of the evidence directly shows Whitley used asbestos-containing products during his employment at Built Rite. However, based upon the overwhelming circumstantial evidence, the Commission concluded Whitley was last injuriously exposed to asbestos at Built Rite. The evidence and findings demonstrate: (1) Whitley performed the same type of work at Built Rite as he had while employed by Defendant; (2) Whitley used Grizzly brake parts while working at Built Rite; (3) asbestos brake parts were prevalent in the industry throughout the early 1980s, which is when Whitley operated Built Rite; and (4) as little as one day of exposure to asbestos fibers can contribute to the development of mesothelioma. As it rests within the Commission's purview to draw reasonable inferences from the evidence, we hold the Commission did not err by making this determination. See Ivey , 109 N.C. App. at 126, 425 S.E.2d at 746 ; see Hatcher , 153 N.C. App. at 780, 571 S.E.2d at 23. Plaintiff's claims are overruled.
VII. Conclusion
The Commission's challenged findings of fact are supported by competent evidence in the record and are binding upon appeal. Based upon those findings, the Commission did not err by concluding Whitley's last injurious exposure to asbestos occurred after employment with Defendant. The Commission's Opinion and Award is affirmed. It is so ordered .
AFFIRMED.
Report per Rule 30(e).
Judges ELMORE and DIETZ concur.